## THE STATE OF ALABAMA V. MONK.

1. When the office of sheriff is full, and a temporary inability of the sheriff to act, from sickness, the Court has no power to direct the coroner to impannel a jury in a criminal case.

2. Whether, in the event of the refusal, or permanent inability of the sheriff to act, the Court does not, inherently, possess the power of appointing a ministerial officer to execute its mandates—*Quere.*

3. The act authorizing the coroner, temporarily to fill the office of sheriff, when a vacancy occurs, until the Executive appoints, is not in conflict with the constitutional provision giving the appointment in case of vacancy, to the Governor.

4. The act authorizing the coroner to act, when the sheriff is a party in interest to any suit, and perform all the duties of sheriff, whenever, from any cause, he may be incompetent to act as such, Aik. Dig. 96, is in affirmance of the common law, and merely authorizes the coroner to act, when the sheriff is *temporarily* incompetent to act, from relationship, interest, &c. &c. but does not apply when the sheriff is *unable* to act.

Referrence of novel and difficult questions from the Circuit Court of Mobile.

THE defendant was tried, and found guilty of murder. At the trial of the cause, the prisoner moved the Court to set aside and quash the pannel of jurors summoned to try the cause, because it appeared that the jury had been summoned, and a list of the jury had been served on the prisoner by the coroner, and not by the sheriff; but it appearing to the satisfaction of the Court, that on Monday, when the Court was about to open, the sheriff of Baldwin county, was confined by sickness, and unable to attend the Court and execute its orders. It was ordered that the coroner of Baldwin, who was then present, do attend said Court, during its present term, and discharge the duties of sheriff thereof, which was ordered to be recorded on the minutes of the Court. The Court refused to quash the pannel, but considering the question one of novelty and difficulty, reserved it for the consideration of this Court.

THE ATTORNEY GENERAL, for the State—cited, the act of 1833, Aik. Dig. 96 § 2, empowering the coroner to act, when from any cause, the sheriff was incompetent to act.

J. GAYLE, contra—cited, the act of 1826, Aik. Dig. 389, §

10, imposing on the coroner the duties of sheriff, whenever that office became vacant, and insisted that the act was in conflict with the constitutional provision which devolves on the Governor, the appointment of sheriff, whenever the office was vacant, that the legislative provision was and void.

He also maintained, that the act cited by the Attorney General, had no application to this case, because, here there was no vacancy, but a mere temporary inability to act.

ORMOND, J.—The act cited by the Attorney General from Aikin's Digest, 389, that whenever the office of sheriff became vacant, the duties of the office should devolve on the coroner, does not, in our opinion, conflict with the constitutional provision, giving the appointment of sheriff, in case of vacancy, to the Governor. The right of the Executive, to fill the office when a vacancy occurs, is entirely consistent with the temporary performance of the duties of the office by the coroner, until the Executive can act. It is impossible to suppose, that the framers of the constitution intended, that during the interval which must elapse between the times when the office became vacant, and the appointment of the new sheriffs the Court should be without an officer to execute its mandates. All that was intended was, that in such a case, there should not be a re-election, but that the Executive should fill the vacancy. But here there was no vacancy, but a temporary inability on the part of the sheriff, to perform the duties of his office; there was therefore, no authority conferred by this statute on the coroner to act.

The Attorney General also insists, that the act authorizing the coroner to execute all process when the sheriff is a party in interest to any suit in the Circuit or County Courts, and perform all the duties of sheriff, whenever, from any cause he may be incompetent to act as such, Aik. Dig. 96, authorized the action of the coroner in this case. We are very clear in the opinion, that this act confers no authority under the state of facts disclosed by this record; at common law, the coroner could not execute a writ, when the sheriff was dead, or the office vacant, and therefore a necessity existed for the passage of the act of 1826, previously cited, which authorises the coroner to act during the *interregnum,* caused by the vacancy of the

The State *v.* Monk.

office of sheriff. The act we are now considering, is merely in affirmance of the common law, which authorised the coroner to perform the duties of sheriff, when that officer was temporarily incompetent, from relationship, interest in the question, &c. 5 Com. Dig. 217, G. 3.

There is a broad distinction between incompetency and inability, when these words are placed in juxta-position, though they may be occasionally used to express shades of the same meaning; but in such cases, the context will always explain the sense in which the term is employed. Thus, in this case, the context shows very conclusively that *temporary* in-competency of the sheriff, was what was provided against—the cases put in the statute by way of example, cannot be considered cases of *inability* on the part of the sheriff to act.

By an act passed in 1826, the Legislature provided, that where jurors had not been drawn or summoned as required by law, or did not attend, that the Court, " may direct the sheriff or other attending officer, *in case of his absence or inability to serve* to empannel a jury instanter," &c. Aik. Dig. 298, § 24. In the case at bar, as the record is silent on the subject, we must presume that a jury regularly summoned were in attendance; but in such a case, no authority is given to invest the coroner with the power of the sheriff, but in case of the absence or inability of the sheriff to act, his duties are devolved on an *attending officer*. This no doubt refers to the deputies of the sheriff, or constables in attendance, three of whom the sheriff is required to summon as bailiffs, to attend upon the Court. It cannot, we think, apply to the coroner, who is not as such, required to attend upon the Court, and cannot therefore be embraced by the term " attending officer."

It appears then by this brief review that the Legislature has provided for the case of a temporary vacancy in the office of sheriff, and for his temporary incompetency to act, and declared who shall perform its duties—it has also provided for summoning a jury, (when that duty has been omitted) by an attending officer of the Court, in the absence or inability of the sheriff to serve; but the case at bar is neither of these. Here the office was full, and their was a mere temporary inability on the part of the sheriff to exercise the duties of the office in person, but no reason is shown why those duties could not be performed by

deputy. It is, to be sure, stated that no deputy was in attendance; this if made known to the sheriff, he would doubtless have supplied, by authorizing some one to act in his place.

The facts of this case, have forced on us the consideration of a question of the highest possible import to the well being; and indeed, to the very existence of society. The concession, that the sheriff is such an integral part of the Court, that its functions would be suspended in the event of his refusal, or inability to act, would seem to strike at the very foundations of social order, by placing it in the power of one man, at his pleasure, to impede or obstruct the action of the tribunals appointed to adjust controversies between individuals, and to punish crimes against the State. We are, however, relieved from the necessity of considering whether, every Court, invested with the great powers just spoken of, does not possess the inherent power to appoint a ministerial officer to enforce its mandates; because in this case, there was such an officer in existence, able and we must presume, willing to obey the commands of the Court. His sickness satisfactorily accounts for his absence from the Court, and we must presume that if informed of the fact, that he had no deputy in attendance, that he would have promptly deputed some one to act in his stead. Until such refusal it cannot be pretended that the extraordinary power of the Court, which we have hinted at, if it exists, could be exerted; and by a review of the statutes, we have shown that no power is conferred by legislative enactment in such a case as the present. As therefore, the jury was not legally summoned, the prisoner was not legally convicted, and the judgment founded on a verdict so obtained, must be set aside, and a *venire de novo*, awarded.

The judgment of the Court below, is therefore reversed, and the cause remanded, that the prisoner may be again tried, unless in the interim discharged, by due course of law.